IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CORPORATIONS FOR CHARACTER,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDERAL TRADE COMMISSION,<br><br>Defendant. | **MEMORANDUM AND ORDER RE<br>MOTION FOR SANCTIONS FOR<br>FAILURE TO MEDIATE IN GOOD<br>FAITH** |
| UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant<br><br>vs.<br><br>FEATURE FILMS FOR FAMILIES, INC.,<br>CORPORATIONS FOR CHARACTER, L.C.,<br>FAMILY FILMS OF UTAH, INC., and<br>FORREST SANDUSKY BAKER III,<br><br>Defendants and Counter-Plaintiffs. | Case No. 2:11-cv-00419<br><br>Judge Clark Waddoups |

This matter is before the court on the motion of Plaintiff/Counterclaim-Defendants Feature Films for Families, Inc., Corporations for Character, L.C., Family Films of Utah, Inc., and Forrest Sandusky Baker, III (collectively, "Family Films") for an order sanctioning the Federal Trade Commission (the "FTC") for failure to participate in good faith in a court-ordered mediation. (Dkt. No. 180.) The motion is supported by the declaration of counsel who participated on behalf of Family Films and supporting exhibits and transcripts. The FTC has filed

an opposition memorandum as well as supporting declarations and exhibits. The court participated in the mediation, including a two-day mediation session and subsequent telephone conferences. The court has carefully reviewed the law and the supporting and opposing materials. For the reasons stated hereafter, the court GRANTS the motion and imposes sanctions against the FTC.

## BACKGROUND

On July 10, 2015, this matter was referred by Judge Robert J. Shelby to Judge Clark Waddoups (the "Mediator" when acting in that role) for mediation upon the joint request of Family Films and the FTC. Counsel for Family Films represented to Judge Shelby that the parties had gone through "extensive discovery" and had had a "full and fair opportunity to understand what the facts are." Counsel for the FTC stated that counsel for Family Films had "set it out very well" and stated "both sides feel that this should be an appropriate time for mediation." (Dkt. No. 182, p 3-4.) At this time, discovery in the case was closed and Judge Shelby had granted summary judgment for the FTC on several issues and defined the issues remaining for trial.

A pre-mediation conference was held before the Mediator on August 10, 2015 to discuss the procedures for mediation, the exchange of position statements, and other requirements for a successful mediation. Daniel McInnis and Russell Harris participated on behalf of Family Films and ███████████ and ███████████ participated for the FTC. The parties agreed on dates for the mediation, agreed to exchange mediation statements, and requested a two-day session, to which the Mediator agreed. At the Mediator's suggestion, the parties also agreed that at the mediation, each side would initially present a 20 to 30-minute opening statement so that the

2

parties could hear the way the case may ultimately be presented to the jury. The Mediator also

discussed the requirement that each side have a person present with authority to settle the case.

Counsel for Family Films stated that Family Films would have its in-house counsel, its CFO, and

an operational person present, and that the CEO would be available by telephone. Counsel for

the FTC stated that any settlement would be required to be approved by the Commission, but

when pressed by the Mediator to ensure that whoever was present was in a position to make

settlement offers that would be recommended to the Commission, counsel for the FTC stated

they would be present and would be able to "participate in that manner." The Mediator further

emphasized the requirement saying, "I would require . . . that we just have somebody there that

has sufficient experience and knowledge to be able to say this is a recommendation that we can

take to the commission and support." ███████ again confirmed his understanding of the

requirement, stating that "myself and ███████ will be present and we will be able to

participate in that manner." (Dkt. No. 200, p. 17.) Both of these points later became issues during

the mediation.

During the pre-mediation conference, counsel for Family Films stated that the FTC had

requested some financial information that Family Films said it would produce prior to the

mediation. Counsel for the FTC acknowledged that this financial information was the only

outstanding issue and if the FTC received the information, they had no problem with the dates

scheduled for the mediation. The mediation was scheduled for September 16 and 17, 2015.

On August 12, 2015, ███████ emailed Mr. McInnis a proposed mediation

scheduling order and attached the FTC's financial statement forms. The proposed order was

never entered. The financial forms asked for substantial and detailed financial information, but

neither the email nor the proposed order specified who was to fill out the information requested in the forms. (McInnis Decl. March 15, 2016, Ex. 2.) The next day, August 13, Mr. McInnis responded that he had spoken to ███████ prior to the parties' joint request that mediation be ordered and told him that

> [what] I thought I could do was provide pre-existing financials for the companies as well as a similar pre-existing financial summary for Forrest [the CEO and owner]. The companies, as you know, have audited financial statements. I also specifically mentioned that trying to get the usual FTC disclosures for fraudsters would be counterproductive for settlement and I didn't want to go to my client to ask them to consider filling them out. I understood from ███████] that was fine. I am in the process of getting the financials right now and will provide it tomorrow. But I didn't want there to be any confusion or disappointment on your part regarding the FTC forms.

(McInnis Decl. March 15, 2016, Ex. 4.)

Family Films sent the promised financials to ███████ ███████ the next day, August 14, 2015. They included Mr. Baker's Personal Financial Statement as of December 2014, the Feature Films for Families Consolidated Audited Financial Statements for FYE July 31, 2014, Feature Films for Families Interim Financials June 2015, Family Films of Utah Interim Financials June 2015, and Corporations for Character Interim Financials June 2015. (McInnis Decl. March 15, 2016, Ex. 8.)

███████ replied on August 21, 2015 that "we've determined that the materials are not sufficient." (McInnis Decl., March 15, 2016, Ex. 9.) He requested a time when counsel could discuss the issue further. Mr. McInnis responded that the financials were the most current personal and corporate financials available, and that updated and audited financials would not be completed until close of the fiscal year. (McInnis Decl., March 15, 2016, Ex. 10.) Apparently, the status of the financials produced remained unchanged during the next month pending the mediation. FTC did not notify either the Mediator or counsel for Family Films that mediation

would not be fruitful given the status of the financials produced. In addition, each party provided the Mediator with mediation statements. Family Films' statement articulated what it believed to be a reasonable basis for settlement and identified issues it believed needed to be addressed. The FTC's statement asserted its claims against Family Films, but did not identify any ideas as to how the issues could be resolved.

The mediation conference proceeded as scheduled on September 16, 2015. As they had committed, Family Films, represented by Mr. McInnis, appeared along with its in-house counsel, the CFO, and an operations manager. ███████ appeared alone for the FTC. He stated that ███████ was unable to attend because of an urgent criminal matter. Neither ███ ███████ nor ███████ had given prior notice to opposing counsel or the court that ███████ would not be present. ███████ refused to provide any further details. Mr. McInnis objected strongly to the absence of ███████ as ███████ had been the counsel who indicated there was a reasonable basis to believe a settlement could be reached.

Nevertheless, Family Films agreed to proceed and make an effort to resolve the case. In a combined session, the Mediator requested each of the parties to present its opening position statement. ███████ declined, saying he had not prepared a statement on behalf of the FTC. Instead, ███████ stated that he was prepared to discuss only the amount of a civil penalty and that the starting point was $16,000 per violation, which would result in a penalty of $2.7 trillion. (McInnis Decl. March 15, 2016, ¶¶ 32, 36 and Ex. 11.) Notwithstanding this refusal, Mr. McInnis gave an approximately 30-minute statement explaining Family Films' position, weaknesses he perceived in the FTC's case, and a basis for settlement. The parties then separated and the Mediator caucused first with ███████. The discussion soon focused on

██████████ understanding of the financial statements and his concern that he did not have sufficient financial information. It became evident that ██████████ understanding of Family Films' financial condition was significantly different than what Family Films claimed. After discussion with each side, and the agreement of Family Films, the Mediator suggested that Family Films' CFO go through the audited financial statements with ██████████, explain the ability of the companies to pay a penalty, and answer any questions. The parties then met together, and the CFO went through the consolidated financial statements in detail and explained to ██████████ the companies' financial condition. During the course of the discussion, it became evident that ██████████ either had not prepared well for the mediation or lacked even a basic understanding of financial statements. In a separate session the Mediator expressed significant disappointment in ██████████ apparent lack of preparation and his unwillingness to engage in meaningful discussion of any avenue to resolve the dispute. The mediation session then adjourned with a request from the Mediator for the parties to review their positions and to come the next morning prepared to discuss proposals to settle the case.

The next morning, counsel for Family Films presented his additional ideas for how the case may be resolved and suggested a settlement proposal. ██████████ complained that Family Films and Mr. Baker had not provided sufficient financial information for the FTC to make a decision about what an appropriate civil penalty may be. ██████████ repeated that it was the FTC's policy to seek an appropriate civil penalty and injunction that would not be so severe as to put Family Films out of business. When requested by the Mediator that he make a proposal for settlement, ██████████ responded that only the FTC could approve a settlement. The Mediator asked whether there was any proposal he could make that he would recommend to the FTC as a

reasonable settlement. ████████ responded that he was not prepared with any proposal that he would recommend to the FTC. It quickly became apparent that ████████ was not in a position to advance negotiations for a settlement and that no further progress could be made in the mediation. The mediation adjourned. Family Films committed to provide ████████ and the FTC with additional financial information, and the parties committed to a further conference call with the Mediator, which was held on September 30, 2015. At the September 30, 2015 conference call, the parties tentatively scheduled a further mediation session for October 14, 2015.

On September 22, 2015, ████████ requested that Mr. McInnis provide information on assets and liabilities for the Family Films companies and information on Mr. Baker's assets and liabilities for 2015. (McInnis Decl. March 15, 2016, Ex. 12.) On September 28, 2015, Mr. McInnis sent ████████ additional unaudited financial information and offered a telephone conference to explain and answer any questions about the materials. Over the next several days the parties exchanged emails, in which ████████ complained that the information was still insufficient and that unless supplemental information was provided and clarified, "we believe that an additional round of mediation would not be worthwhile." (McInnis Decl. March 15, 2016, Ex. 13-15.) On September 30, Mr. McInnis provided ████████ with the additional information requested, which was unaudited and as it then currently existed in the company's records. Mr. McInnis also reiterated the offer for a telephone conference, in which Family Films would explain and answer any questions about the financial statements. (McInnis Decl. March 15, 2016, Ex. 16.) The next day, ████████ communicated to Mr. McInnis that the FTC specifically had questions about Mr. Baker's finances, and ████████ and Mr.

McInnis continued to exchange emails attempting to set a time for a conference call to discuss the financial materials provided. (McInnis Decl. March 15, 2016, Ex. 17.) On October 2, 2015, ███████████ sent Mr. McInnis an email with an attached list of information the "FTC feels it needs to review before it can enter a settlement agreement." The attached list included twenty-seven categories of requested information, many of which were requests for documents for several prior years that had already been provided. For example, the first two categories included a request for tax returns for Mr. Baker and for the companies for years 2012 through 2014. (McInnis Decl. March 15, 2016, Ex. 18.) Mr. McInnis responded by asking if ███████████ really wanted him to ask Family Films to provide the information and stated that "this is not the way to try to settle a case in good faith." (McInnis Decl. March 15, 2016, Ex. 19.) Nevertheless, a conference call between the parties was held on October 5, during which time Family Films' CFO answered questions about the financial materials for an hour and a half, after which the FTC represented that it would not be able to engage in meaningful settlement discussions without all of the information requested on its list. (McInnis Decl. March 15, 2016, Ex. 20.) On October 8, the Mediator held a telephone conference, where the parties reported on their conference call, and a discussion was held regarding the additional information Family Films was willing to produce in pursuit of settlement negotiations.

On October 7, November 2, and November 5, Mr. McInnis provided the FTC lawyers with additional financial information, including a CD with licenses and bank account statements. Mr. McInnis stated that the only information not produced were Mr. Baker's tax returns pending agreement on a protective order. (McInnis Decl. March 15, 2016, Ex. 21.) ███████████

continued to assert that the information provided was insufficient. (McInnis Decl. March 15, 2016, Ex. 25.)

On November 4, 2015, the parties held a further status conference with the Mediator. One of the issues that had been discussed throughout the mediation was whether the FTC was attempting to gain an advantage in the litigation by obtaining financial information that it had not obtained prior to the close of discovery. Family Films and Mr. Baker viewed the request for his tax returns as particularly sensitive information that had not been obtained during discovery by the FTC. The FTC had requested Mr. Baker's tax returns during discovery, but he objected. The FTC did not move to compel production of the tax returns or move to overrule the objection. (McInnis Decl. March 15, 2016, ¶ 58.) Because the discovery period had closed, the unchallenged objection would preclude the FTC from obtaining or using the tax returns at the trial.

The important issue during the telephone conference was Mr. McInnis' request that a protective order be in place before he produced Mr. Baker's personal tax returns. At the conclusion of the conference, the Mediator asked the parties to attempt to reach an agreement for a protective order under which the remaining tax returns and supporting documents could be produced. On November 12, 2015, Mr. McInnis proposed the following language as a protective order for Mr. Baker's tax returns:

> All statements made during the course of the mediation are privileged settlement discussions, are made without prejudice to any party's legal position, and are non-discoverable and inadmissible for any purpose in any later legal or administrative proceeding whatsoever. All documents exchanged during the course of the mediation are confidential and will be returned or destroyed within five (5) days of the conclusion of the mediation, and any work product containing or created from such confidential documents shall be destroyed within five (5) days of the conclusion of the mediation. However, evidence that is otherwise admissible or discoverable shall not be rendered

inadmissible or non-discoverable as a result of its disclosure or use during the mediation proceedings; provided, however, no party shall use information, including information gained from documents, to seek or support discovery of such information.

(McInnis Decl. March 15, 2016, Ex. 26.)

On November 20, 2015, █████████ offered the following counter proposal:

The Consumer Protection Branch ("this Office") agrees that Mr. Baker's tax returns will not be used directly in this Office's case-in-chief at trial or in arguing for civil penalties, except as impeachment evidence in the event that Mr. Baker or any of his co-defendants in the above-referenced matter make arguments or present evidence that is inconsistent with the contents of Mr. Baker's tax returns.

It is expressly understood and agreed that this agreement shall in no way impact this Office's use of evidence derived from Mr. Baker's tax returns. This Office expressly reserves the right to pursue any and all leads derived from Mr. Baker's tax returns and to use such derivative evidence in all phases of the above-referenced matter.

███████ Decl. March 29, 2016, Ex. I.)

After further discussion and the exchange of several emails, the parties reported to the Mediator on February 18, 2016 that they had reached an impasse regarding an appropriate protective order, and the FTC had concluded that "further efforts to mediate the matter would not be productive." ████████ Decl. March 29, 2016, Ex. U.)

## ANALYSIS

At the outset, the court reiterates that mediation is largely a voluntary process. No party, including the FTC, can or should be required to resolve a case or to offer to settle on terms that are inconsistent with its own assessment of its legal position and rights. *See In re Novak*, 932 F.2d 1397, 1405 (11th Cir. 1991). Nevertheless, when a party requests and agrees to engage in a mediation process, it undertakes an obligation to do so in good faith. *See Nick v. Morgan's Foods*, 270 F.3d 590 (8th Cir. 2001). A party fails to act in good faith if it allows the opposing party to expend time and expense to prepare and participate in the mediation when it knows, or

reasonably should understand, that it is only willing to settle on terms that are not feasible or acceptable to the opposing party. *See Grigoryants v. Safety-Kleen Corp.*, 2014 U.S. Dist. LEXIS 72190 (W.D. Pa., May 28, 2014). Professional courtesy, candor, and good faith impose a duty to advise opposing counsel of non-negotiable terms, information required, or other conditions that must be met before a settlement will be considered. If opposing counsel then chooses to proceed with the mediation, it does not have a legitimate basis to complain about these issues. A failure to disclose such conditions, however, means that the party willing to participate in good faith should reasonably infer that terms will be negotiated consistent with the ability of both parties to accept.

Federal Rules of Civil Procedure 16 and 37 authorize a court to impose sanctions "if a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in [a pretrial settlement] conference." FED. R. CIV. P. 16(f)(1)(B).[1] "Moreover, courts have broad inherent power to sanction misconduct and abuse of the judicial process," *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), such as actions undertaken for an "improper purpose," *see United States Indus. v. Touche Ross*, 854 F.2d 1223, 1240 (10th Cir. 1988). While "sanctions imposed pursuant to [a] court's inherent authority generally require a finding of bad faith," sanctions imposed pursuant to Federal Rule of Civil Procedure 16 do not have a similar requirement.[2] *Hunter v. Prisbe*, 2013 U.S. Dist. LEXIS 43102 (M.D. Pa. Mar. 27, 2013).

---

[1] Monetary sanctions against the government imposed pursuant to Rule 37(b) of the Federal Rules of Civil Procedure are appropriate when just and specifically related to the misconduct. *United States v. Nat'l Med. Enterprises, Inc.* 792 F.2d 906 (9th Cir. 1986) (upholding order of monetary sanctions pursuant to Rule 37); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980) (same).

[2] In its opposition to the motion for sanctions, the FTC does not challenge the authority of the court in its role as Mediator to impose sanctions for failure to mediate in good faith. (Dkt. No.

Courts routinely award sanctions for failure to participate in good faith in mediation. Such failures can include inadequate preparation and noncompliance with pre-mediation orders. *See, e.g., Nick v. Morgan's Foods*, 270 F.3d 590 (8th Cir. 2001) (parties failed to prepare required pre-mediation memorandum); *Richard v. Spradlin*, 2013 U.S. Dist. LEXIS 52905 (S. Dist. Ky. 2013), *aff'd sub nom.* 2014 U.S. App. LEXIS 13756 (6th Cir. 2014) (counsel arrived hours late and immediately requested to delay ongoing discussions while he spoke to his clients and made telephone calls); *Univ. of Pittsburgh v. Varian Med. Sys.*, 2008 U.S. Dist. LEXIS 32077 (W.D. Pa. Apr. 17, 2008) (parties failed to comply with pre-mediation orders); *Outar v. Greno Indust.*, 2005 U.S. Dist. LEXIS 34657 (N.D. N.Y. Sept. 27, 2005) (party failed to gain a basic understanding of the mediation process so he could reasonably participate); *Francis v. Women's Obstetrics & Gynecology Grp., P.C.*, 144 F.R.D. 646, 649 (W.D.N.Y. 1992) (counsel failed to provide a statement of facts and legal issues and raised new issues at the mediation that he claimed "as a basis for not being in a position to make an offer").

Failure to mediate in good faith is also demonstrated when parties fail to attend mediation, fail to send someone with sufficient authority to settle, or engage in other actions that constitute inappropriate barriers to good faith settlement discussions. *See e.g., Jones v. Trawick*, 1999 Colo. J. C.A.R. 2534 (10th Cir. 1999) (failure to attend mediation); *Spradlin*, 2014 U.S. App. LEXIS 13756 (failure to attend with someone having sufficient settlement authority); *Grigoryants v. Safety-Kleen Corp.*, 2014 U.S. Dist. LEXIS 72190 (W.D. Pa., May 28, 2014) (failure to disclose before mediation the company's policy terms of non-settlement prior to

203.) FTC's failure to cite authority "suggests either that there is no authority [for a contrary position] or that it expects the court to do its research." *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970).

discovery closing); *Toscano v. Lewis*, 2015 U.S. Dist. LEXIS 165169 (N.D. Cal., Apr. 16, 2013) (appear at mediation but refuse to participate); *U.S. Bank v. Sawyer*, 2014 ME 81 (Me. 2014) (continually ask during four mediation sessions for documents the other party had previously provided).

Finally, failure to mediate in good faith also occurs when parties or counsel fail to "notify the court beforehand that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and energies" of the court and the opposing party. *O'Donnell v. Pa. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 11438 (M.D. Pa. Feb. 4, 2011) (citing *Karahuta v. Boardwalk Regency Corp.*, 2007 U.S. Dist. LEXIS 72510 (E.D. Pa. Aug. 7, 2007). In contrast, where parties candidly communicate to the court in advance that settlement discussions are likely to be futile so as to avoid "unnecessary scheduling and pointless preparation for the parties and the court," sanctions are not appropriate. *Adams v. Corr. Corp. of Am.*, 2011 U.S. Dist. LEXIS 120705 (M.D. Pa. Oct. 19, 2011). Guided by this authority, the court finds that sanctions are appropriate in this case.

Here, ██████████ first persuaded Mr. McInnis that, with his involvement, FTC and Family Films could now expect to have settlement discussions on reasonable terms. Discovery had been completed. Judge Shelby had ruled on the motions for summary judgment defining the issues to be tried. The FTC represented to Judge Shelby that the parties jointly requested mediation. The only additional information that the FTC indicated it needed was updated financial information. ██████████ initially agreed to the exchange of documentation Mr. McInnis offered to provide the FTC, and represented to the court—both at the time mediation

was initially ordered and then again with ████████ before the Mediator—that the FTC and Family Films were in agreement as to the purpose, timing, and scope of mediation.

Mediation expectations were further defined and clarified at the pre-mediation conference. Three of the FTC's representations were important and ultimately became impediments to a successful mediation. First, the FTC confirmed that both ████████ and ██ ████████ would be present at the mediation. Although ████████ had been involved while he was at the FTC, he had only recently appeared as trial counsel. ████████ had been lead counsel and, more importantly, he had been involved in the discussions suggesting a settlement was possible. Second, the FTC agreed that counsel for each side would make a 30-minute opening statement, explaining the strength of its case and its position for settlement. Third, the FTC represented that mediation would be attended by counsel with both the experience and the authority to agree to a settlement that would be recommended to the Commission.

The first indication of FTC's lack of good faith was the failure of ████████ to appear at the mediation. No prior notice was provided or even attempted to be provided to the Mediator or Family Films. The mediation could have been rescheduled if the conflicting event was truly so urgent it could not be avoided. The only explanation ████████ gave when he arrived alone at mediation was that ████████ had an urgent criminal matter. There was no explanation about when the issue arose or whether someone other than ████████ could have handled it. No further details have ever been provided, even in the FTC's memorandum opposing sanctions. Failure to notify opposing counsel and the Mediator was a lapse of professional courtesy and the first indication that the FTC did not intend to proceed with mediation in good faith.

Second, █████████ refused to follow the agreed-upon mediation process by being

unwilling or unprepared to make an opening statement. The failure left Family Films and the

Mediator without a sense of how FTC intended to proceed. █████████ failure to appear

followed by █████████ failure to state the FTC's position as it previously agreed to do also

signaled that the FTC and its counsel lacked a good faith commitment to the mediation process.

Third, as Family Films attempted to propose and negotiate a settlement, it became

apparent that █████████ had not come prepared with an offer that he would recommend to the

Commission. He was willing to talk about a civil penalty and a standard form of judgment, but

he was not prepared even to suggest a penalty range that he would be willing to recommend. His

only position was that FTC could demand a penalty that would approximate $2.7 trillion, even

though he asserted it was not FTC's goal to financially bankrupt Family Films or put it out of

business. FTC's failure to come prepared to recommend anything other than a $2.7 trillion

penalty effectively precluded any meaningful settlement discussions. Ultimately, █████████

admitted that he was not prepared to counter with any settlement offer. This failure further

indicated FTC's lack of good faith.

█████████ attempted to justify his refusal to meaningfully discuss settlement by

claiming he did not have the necessary financial information. The explanation lacks credibility.

First, if true, █████████ could and should have raised this concern at any time prior to

mediation after receiving the financial information Family Films agreed to provide to ████

████. Second, notwithstanding that the FTC had received significant updated financial

disclosures more than a month prior to mediation, it was evident in discussions with the Mediator

that █████████ was unprepared with even a basic understanding of Family Film's financial

disclosures. It was unclear whether ███████ even understood the difference between the income statements and the balance sheets. His claims about the amount of money that would be available for a settlement penalty were not consistent with the financial statements Family Films had provided. Further, even after Family Films' CFO spent significant time explaining and answering questions about the financial condition of the companies, ███████ was unwilling to acknowledge his misunderstanding and insisted that his view was correct. Finally, ███ ███████ was unwilling to acknowledge that the companies' audited financial statements were an acceptable basis to at least negotiate, subject to being confirmed and updated.

In summary, FTC came to mediation without ███████ who it represented and committed would be there. ███████ was unprepared or unwilling to make an opening statement, and demonstrated a lack of preparation and understanding of the financial statements. Even after having a full opportunity to become educated while at the mediation, ███████ insisted that FTC had no position other than its $2.7 trillion potential claim. ███████ came without authority to make any settlement offer that would be recommended to the Commission. Indeed, the evidence demonstrates that counsel for the FTC was never prepared to offer a settlement proposal that its counsel would recommend to the Commission. If such a proposal was prepared and discussed internally, it was never communicated to Family Films or its counsel. Mediation in good faith requires that the parties at least be willing to exchange ideas for a settlement that would be acceptable to their clients. That never occurred in this case. Essentially, the FTC did little more than appear at the mediation while refusing to participate, without notifying either the court, Mediator, or counsel that the FTC's actual position was a non-settlement position such that mediation would be futile. The evidence demonstrates that FTC did

16

not proceed with any intent to reach an agreement that it knew or should have known would be acceptable or even feasible to Family Films and Mr. Baker.

The FTC's conduct following the two-day mediation session in September further supports the conclusion that it failed to act in good faith by demonstrating that the FTC's pursuit of mediation was for an improper purpose. Almost immediately after the two-day session adjourned, Family Films provided the additional financial information discussed at mediation. Ultimately, Family Films produced hundreds of pages of financial documents. These documents included updated—although unaudited—financial statements, which represented the most current financial information available to the companies. In addition, Family Films offered to and did participate in telephone conferences where its counsel and CFO explained the documents and answered questions. The documents included at least the first two pages of Mr. Baker's tax returns, although not all of the attached schedules and other forms. In response to each production, counsel for the FTC continued to insist that it lacked sufficient information to make an assessment necessary to propose a settlement. Counsel for the FTC insisted that the FTC needed all of Mr. Baker's supporting tax return documents to make a decision on settlement.

With the encouragement of the Mediator, Counsel for Family Films offered to produce the tax returns if the parties could agree on an appropriate protective order. Counsel for Family Films proposed an order that would limit the use of the tax returns for the purposes of the mediation only. The proposal included the following important exception: "However, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its disclosure or use during the mediation proceedings." The effect of Family Films' proposed protective order would have been to provide the FTC with the

information it requested for purposes of the mediation and settlement negotiations, but preclude its use in any way that would have given the FTC a litigation advantage. The exception preserved to the FTC the right to argue that it had a right to the information due in the regular course of discovery, including Family Films' duty to supplement its prior production of documents. At the same time, the exception also preserved to Family Films its argument that the tax returns are privileged and that the FTC had never challenged that privilege during the discovery period.

The FTC offered a counterproposal in which the "Consumer Protection Branch" would agree not to use the tax returns during its case-in-chief or for arguing for civil penalties, but expressly preserved its right to use evidence "derived from Mr. Baker's tax returns" and to "pursue any and all leads derived from Mr. Baker's tax returns." The counterproposal was understandably unacceptable to Family Films and Mr. Baker. The ability to use leads and information derived from the tax returns would have placed the FTC in a better position than it was at the close of discovery. The FTC's unwillingness to agree to a protective order that still preserved its right to use any evidence it would otherwise have been legally entitled to use at trial, so that it could obtain—by its own assertions—the remaining documents it needed for settlement discussions, supports a reasonable inference that the FTC's primary motivation for demanding the tax returns and financial information was to gain an advantage through the arbitration process. Such an attempted misuse of the mediation process is an improper purpose and is evidence of a lack of good faith.[3]

---

[3] In its opposition to Family Films' motion for sanctions, the FTC argues that its financial expert has preliminarily determined that Mr. Baker's net worth is multiple times higher than the amount shown on the financial statements produced. In support of this argument, the FTC

18

Having concluded that the FTC did not act in good faith, the court now considers an appropriate sanction. The FTC's failure to be prepared for mediation and proceed in good faith with a proper purpose prejudiced the rights of Family Films. Good faith mediation does not require that the parties actually reach agreement, but there must be a diligent and reasonable effort to attempt to do so. *See In re Novak*, 932 F.2d at 1405. The court also has an interest in preventing misconduct and abuse of the judicial process. *See Chambers*, 501 U.S. 32.

Counsel for Family Films and its executives spent substantial time preparing for and pursuing a settlement agreement. They had a reasonable expectation that the FTC and its counsel would make a serious effort to also engage in good faith. Family Films has submitted support that it incurred mediation preparation costs of $44,317.50 in fees from July 10, 2015 through September 17, 2015 (the end of the in-person mediation), along with $3,100.84 in travel and modest expenses for this time period. The court finds that Family Films was well prepared for reasonable settlement discussions and that this time and expense was appropriate under the circumstances. Family Films has submitted support that thereafter it incurred additional fees of $39,604.50 pursuing a settlement following the two-day mediation session, including research,

---

attaches the Declaration of Dr. Kenneth H. Kelly, CRA. Dr. Kelly provides several paragraphs setting forth his credentials and FTC practices, why he believes tax returns and bank statements may be helpful, and detailing his experience in "another matter" in which he found useful information in a bank statement. Dr. Kelly includes only a single paragraph in which he gives an "illustration" from one of the businesses owned by Mr. Baker. Dr. Kelly does not provide any details as to how he reached his conclusion and does not provide any supporting work papers. In effect, Dr. Kelly provides a naked opinion that is of no use to the court in evaluating whether the FTC has acted in good faith. Significantly, Dr. Kelly states he reviewed the Family Films financial information in January 2016, long after the two-day mediation session and at a point when any efforts to resolve the financial issues had largely failed. Dr. Kelly's conclusory declaration is not sufficient to counter the substantial evidence that the FTC acted with an improper purpose and failed to proceed in good faith.

correspondence, telephone conferences, and production of financial documents. The court notes that the majority of this time and expense was necessary, appropriate, and directly related to the mediation process. Because at least some portion of the production of financial documents could potentially have been subject to supplementation required by FED. R. CIV. P. 26(e), however, after review of the time spent producing documents, the court discounts fees for this time period by 20%, for a total fee of $31,683.60. Preparation for and submission of the motion for sanctions led to an additional $5,190 in fees prior to February 18, 2016 and $15,810 thereafter, for a total of $21,000. The court finds that this time and expense was also reasonable under the circumstances. The court hereby awards sanctions in favor of Family Films and against FTC in the total amount of $81,201.94.

As a further sanction, the court finds that the FTC should not gain an advantage at trial or otherwise from Family Films' production of financial information during the mediation process. The financial information was produced for the purpose of mediation and the FTC should not be allowed to benefit for its failure to engage in good faith. The court finds and orders as an additional sanction that the FTC shall not use during the trial of this matter any documents produced for the purpose of mediation with the exception that evidence that would otherwise be admissible or discoverable is not barred from being offered at trial. The trial court shall determine the admissibility of such evidence, but the FTC shall bear the burden of proving that documents produced after July 10, 2015 were both discoverable and admissible. The court also finds and orders that within 15 days following the trial, all documents that were produced by Family Films after July 10, 2015 in this matter—excepting those that have been appropriately admitted at trial—shall be returned by the FTC to counsel for Family Films. Thereafter, the FTC

is ordered to destroy all copies, including electronic copies, of such documents and is forbidden from using these documents, including leads or evidence derived from such documents, for any other purpose.

The court further orders that distribution of this Memorandum Decision and Order shall be limited to the parties and their counsel until trial in this matter is complete. Upon completion of trial, counsel for Family Films shall notify the undersigned, at which time this Memorandum Decision and Order shall be unsealed. A brief, unsealed, order addressing document production during trial shall be issued contemporaneously with this order for the parties' use in pre-trial and trial proceedings.

## CONCLUSION

For the foregoing reasons, the court grants Family Films' Motion for Sanctions. (Dkt. No. 180.)

DATED this 22nd day of April, 2016.

BY THE COURT:

Clark Waddoups
United States District Court Judge

United States District Court
for the
District of Utah
April 22, 2016

\*\*\*\*\*\*MAILING CERTIFICATE OF THE CLERK\*\*\*\*\*\*

RE:  Corporation for Character v. Federal Trade Commission
     2:11-cv-00419-RJS-DBP


Joan M. Andrews
FABIAN VAN COTT
215 S STATE ST STE 1200
SALT LAKE CITY, UT  84111-2323

Jared C. Bennett
US ATTORNEY'S OFFICE (UT)
SALT LAKE CITY, UT  00000

David J. Carey
THOMPSON HINE LLP
41 S HIGH ST STE 1700
COLUMBUS, OH  43215

Errol  Copilevitz
COPILEVITZ & CANTER LLC
310 W 20TH ST  STE 300
KANSAS CITY, MO  64108

Drake  Cutini
US DEPARTMENT OF JUSTICE (CONSUMER)
PO BOX 386
WASHINGTON, DC  20044

███████ █████ █████████SUMER PROTECTION
450 5TH ST NW
WASHINGTON, DC  20001

Karen  Donnelly
COPILEVITZ & CANTER LLC
310 W 20TH ST  STE 300
KANSAS CITY, MO  64108

David A. Frank
US DEPARTMENT OF JUSTICE (386)
PO BOX 386
WASHINGTON, DC  20044

Russell D. Harris
5286 S COMMERCE DR STE A-136
MURRAY, UT  84107

Daniel Ferrel McInnis
THOMPSON HINE LLP
1919 M STREET NW STE 1050 E
WASHINGTON, DC  20036

Allison F. Sheedy
CONSTANTINE CANNON LLP
1001 PENNSYLVANIA AVE NW STE 1300 N
WASHINGTON, DC  20004

Michael  Tankersley
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVE NW
WASHINGTON, DC  20580

Ruth K. Schriock, Deputy Clerk

Case: 2:11-cv-00419-RJS-DBP

██████ ██████ ████████
US DEPT OF JUSTICE, CON███ER PROTECTION
450 5TH ST NW
WASHINGTON, DC 20001

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -